**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>B & P MECHANICAL, INC., )<br>ABL AUTOMATION, INC., )<br>ELECTRONIC EXPEDITORS, INC., )<br>MANISHKUMAR PATEL and )<br>ASMITA PATEL, )<br><br>Defendants. ) | Case No.: |

**COMPLAINT FOR CONTRACTUAL INDEMNITY AND SPECIFIC
PERFORMANCE OF COLLATERAL POSTING PROVISION**

Selective Insurance Company of America ("Selective") sets forth the following as its complaint against B&P Mechanical, Inc., ABL Automation, Inc., Electronic Expeditors, Inc., Manishkumar Patel and Asmita Patel (referred as "Defendants" or "Indemnitors"):

**PARTIES**

1.      Selective is an insurance company organized under the laws of the State of New Jersey with its principal place of business in the State of New Jersey and is a citizen of the State of New Jersey.

2.      Defendant Manishkumar Patel is an individual residing in the State of Illinois and is a citizen of Illinois.

3.      Defendant Asmita Patel is an individual residing in the State of Illinois and is a citizen of Illinois.

4.      Defendant B&P Mechanical, Inc. is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Appleton, Wisconsin, and is a citizen of Wisconsin.

5.      ABL Automation Inc. is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Oak Creek, Wisconsin, and is a citizen of Wisconsin.

6.      Electronic Expeditors, Inc., is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Oak Creek, Wisconsin, and is a citizen of Wisconsin.

<b>JURISDICTION AND VENUE</b>

7.      Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of the State of New Jersey, the Defendants are citizens of the State of Wisconsin, and the amount in controversy exceeds $75,000.00.

8.      Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391, the Defendants reside within this district and the performance of the contracts and other obligations that are the subject matter of this suit were to be primarily performed within this district, the Defendants conduct business within this district, and under the terms of the General Indemnity Agreement, dated January 15, 2021, the Defendants agreed that suit could be brought in this district. The General Indemnity Agreement is **Exhibit A** to this Complaint (¶ 23).

<b>FACTUAL BACKGROUND</b>

9.      Selective provided surety bonds on behalf of B&P Mechanical, Inc. and in favor of various obligees, which bonds secured the obligations of B&P to perform its contracts with these obligees and to pay for the labor and materials required for the performance of those

2

Complaint of Selective for Contractual Indemnity, Specific Performance and Other Relief

contracts.  Selective provided the following bonds to secure B&P's performance of contracts

with the named obligees and payment for labor and materials required to complete those

contracts:

Bond Number       Penal Sum     Obligee

1. Bond No. B 1337037  $5,900,000    Green Bay Area Public School District
2. Bond No. B 1336265  $6,020,000    UWGB Cofrin Technology and Educations Center
3. Bond No. B 1336210  $1,254,529    Howe Elementary
4. Bond No. B 1320220  $106,960     State of Wisconsin
5. Bond No. B 1324018  $60,180      Fox Valley Technical College
6. Bond No. B 1312820  $912,250     The Samuels Group, Inc.
7. Bond No. B 1305872  $3,452,219    Appleton Area School District
8. Bond No. B 1300487  $2,713,350    Performance Services, Inc
9. Bond No. B 1253279  $1,209,042    Capelle Bros. & Diedrich, Inc.

(Referred to as the "Bonds")

10. In consideration of the execution of the Bonds and as a condition for Selective to

provide bonds for B&P, the Defendants entered into the General Agreement of Indemnity

("GAI") that is **Exhibit A.**

11**.** The GAI provides the Defendants must indemnify and exonerate Selective should

it incur losses or be threatened with claims, and states in part in Paragraph 3:

*The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless Surety (and any surety that Surety procures to execute any Bond and any other surety with which Surety may act as co-surety on any Bond or other instrument) from and against all liability, loss, cost, damage and expense of whatsoever kind or nature, including, but not limited to, interest, court costs and counsel, attorneys, consulting accounting and other professional and trade fees, whether incurred on a flat fee per claim, percentage, time and material, hourly or other basis (including the cost of in-house professionals) which Surety may sustain, incur, be put to or to which it may be exposed (1) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this Agreement or, (3) in enforcing any of the promises, covenants or conditions of this Agreement.....*

Complaint of Selective for Contractual Indemnity, Specific Performance and Other Relief

12. The GAI also provides the Defendants must provide collateral upon demand to Selective should it post a reserve for losses and expenses, and states in part in Paragraph 4:

*If Surety or any reinsurer shall establish a reserve to cover any liability, claim asserted, suit, award or judgment in connection with any Bond, or any loss, cost, expense or fee in connection therewith, the Indemnitors, immediately upon demand (the "Collateral Demand"), whether or not Surety shall have made any payment therefor and whether or not the collateral demanded may be in addition to other collateral security previously provided to Surety, shall provide to Surety at its Home Office, funds and/or other collateral security, which Surety in its sole discretion deems adequate, equal in value to such reserve and any increase thereof as collateral security on such Bond….*

13. In December of 2025, B&P was unable to continue performing the work on the contracts for which Selective provided bonds and abandoned those contracts.

14. As required by the terms of the Bonds, Selective arranged for the performance of the work required by the contract and paid for materials and equipment required to complete those contracts.

15. As of the date of the filing of this Complaint, Selective paid for performance of the contracts, for labor and materials required for the contracts, and expenses and attorneys' fees the total amount of $2,954,356.00.

16. In addition to the loss paid to date referenced in Paragraph 15 above, in anticipation of additional losses and expenses related to the contracts and in enforcing the obligations of the Defendants under the terms of the GAI, Selective established a reserve for future loss and expenses of $822,336.00.

17. On February 12, 2026, Selective through counsel sent a demand to all of the Defendants, demanding that they post collateral in the approximate amount of the reserve posted on that date of $3.7 million (the actual loss in Paragraph 15 and the reserve described in Paragraph 16 was the reserve at that time). The Demand Letter is **Exhibit B** to this Complaint.

Complaint of Selective for Contractual Indemnity, Specific Performance and Other Relief

18. Defendants have failed or refused to post collateral or to reimburse Selective as required by the terms of the GAI.

19. Selective lacks an adequate remedy at law, absent the Court enforcing the Defendants' full performance of the GAI.

20. Selective is continuing to incur losses, attorneys' fees, and expenses because of the Defendants' failure to perform the GAI.

## COUNT I

### BREACH OF THE GENERAL AGREEMENT OF INDEMNITY

1-20. Selective restates and realleges paragraphs 1-20 as set forth above as and for paragraphs 1-20 of Count I.

21. Selective has fully performed its obligations under the terms of the General Agreement of Indemnity.

22. The Defendants breached their obligations to Selective by failing to reimburse the $2,954,356.00 of losses, expenses, and fees paid by Selective as of the date of filing of this Complaint.

WHEREFORE, Selective Insurance Company of America prays the Court enter judgment in its favor and against the Defendants in the amount of $2,954,356.00, and such other additional amount as Selective may have paid at the time of the entry of judgment on Count I, together with the additional attorneys' fees and costs it will have paid, and for such further relief as the Court deems appropriate.

Complaint of Selective for Contractual Indemnity, Specific Performance and Other Relief

**COUNT II**

**SPECIFIC PERFORMANCE OF THE COLLATERAL POSTING PROVISION**

1-20. Selective restates and realleges paragraphs 1-20 as set forth above as and for paragraphs 1-20 of Count II.

21. Selective has fully performed its obligations under the terms of the General Agreement of Indemnity.

22. The Defendants breached their obligations to Selective by failing to comply with the demand to post collateral in the amount of the reserve, which now remains set at $822,366.00.

WHEREFORE, Selective Insurance Company of American prays the Court enter an order compelling the Defendants to post collateral in the amount of the reserve posted as of the date of the filing of this Complaint, $822,366.00, or in such other amount as the reserve posted at the time of entry of relief on Count II, and to award expenses, attorneys' fees and costs in seeking this relief, and for such other relief as the Court deems appropriate.

**COUNT III**

**EXONERATION AND REIMBURSMENT FROM B&P MECHANICAL**

1-20. Selective restates and realleges paragraphs 1-20 as set forth above as and for paragraphs 1-20 of Count III.

21. As the principal of the bonds, B&P owes Selective the common-law duty of exoneration, to perform the underlying contract obligation before the surety is called upon to perform, and to provide collateral or other security for that performance to the surety through the remedy known as quia timet.

22. As the principal of the bonds, B&P is obligated by common law to reimburse Selective as its surety for the losses paid by Selective to claimants and for the costs and expenses of arranging performance of the contracts secured by the bonds.

23. B&P has failed or refused to reimburse Selective for the paid losses and to provide collateral and other security for the losses that Selective anticipates it will incur.

WHEREFORE, Selective Insurance Company of America prays the Court enter judgment enforcing the obligations of B&P to reimburse and exonerate Selective entering judgment in the amount of the losses and costs related to performance and payment of contract obligations secured by the bonds, and requiring B&P to post collateral or other security in the amount of the anticipated losses, and for such further relief as the Court deems appropriate.

## COUNT IV

## PRODUCTION OF BOOKS AND RECORDS

1-20. Selective restates and realleges paragraphs 1-20 as set forth above as and for paragraphs 1-20 of Count IV.

21. The GAI in paragraph 12 requires Defendants to produce books and records related to their financial condition and the status of the contracts and the payments required under the contracts.

22. Selective has sought books and records from B&P and Manishkumar Patel.

23. These Defendants provided some records regarding contract payables and other contract information but did not provide the full scope of the records required by paragraph 12 of the GAI some of which may be needed by Selective to close out the contracts.

WHEREFORE, Selective Insurance Company of America prays the Court enter an order enforcing the obligations of B&P and of the other Defendants to provide to Selective the full

Complaint of Selective for Contractual Indemnity, Specific Performance and Other Relief

scope of the documents required by paragraph 12 of the General Agreement of Indemnity, and for such further relief as the Court deems appropriate.

Dated:   May 6, 2026

                                        SELECTIVE INSURANCE COMPANY OF AMERICA

                                        /s/ T.Scott Leo
                                        T. Scott Leo (WI # 1089980)
                                        sleo@leolawpc.com
                                        Law Office of T. Scott Leo, P.C.
                                        100 N. LaSalle St.
                                        Suite 514
                                        Chicago, Illinois 60606
                                        Phone: 312-857-0910

# EXHIBIT A

**Complaint for Indemnity and Specific Performance**

General Agreement of Indemnity Dated January 15, 2021

 SELECTIVE®

# Indemnity
# Review & Safekeeping

(To be completed and submitted to the Bond SBU with all original General Agreements of Indemnity, Subordination Agreements; Capital Retention Agreements; Addenda Adding Indemnitors to an existing General Agreements of Indemnity)

**SELECTIVE INSURANCE COMPANY OF AMERICA**
**40 Wantage Avenue**
**Branchville, NJ 07890**
**Attn: BOND SBU**

| PRINCIPAL/ACCOUNT:<br><br>**B & P Mechanical Inc** | Contract: ☑<br>Contractor Express: ☐<br>Commercial: ☐ |
|---|---|
| REGIONAL OFFICE: **Heartland** | |
| PURPOSE (New Account; Update; Add Indemnitor; Subordination; Capital Retention) :<br>**New Account** | |
| Underwriter Approval:<br>(Print & Sign) | DATE: |
| Regional Manager Approval:<br>(Print & Sign)   **Nicki Howe** | DATE:   **04/08/2021** |
| Bond SBU Approval:<br>(Print & Sign) | DATE:<br>5/4/21 |
| Additional Comments: | |

Rev 01/2013

**Selective Insurance Company of America**
Home Office; Attn: Bond SBU
40 Wantage Avenue
Branchville, NJ 07890

## GENERAL AGREEMENT OF INDEMNITY

**THIS IS AN IMPORTANT DOCUMENT WHICH AFFECTS YOUR RESPONSIBILITIES AND OBLIGATIONS TO SELECTIVE INSURANCE COMPANY OF AMERICA WITH REGARD TO THE BOND FOR WHICH YOU HAVE APPLIED. READ THIS DOCUMENT CAREFULLY. IF YOU HAVE ANY QUESTIONS OR DO NOT UNDERSTAND IT FULLY, CONSULT WITH YOUR ATTORNEY BEFORE SIGNING IT.**

This General Agreement of Indemnity (hereinafter referred to as "Agreement") is made by each person, organization and other entity executing this Agreement under the designation Indemnitor, (hereinafter individually and collectively referred to as "Indemnitors") in favor of **SELECTIVE INSURANCE COMPANY OF AMERICA** its successors and assigns (hereinafter called "Surety").

WITNESSETH

WHEREAS, one or more of the Indemnitors, in connection with the performance of contracts and/or the transaction of business and/or the fulfillment of obligations generally, whether solely in its own name or as a co-adventurer with others, has heretofore desired, been required or may, in the future desire or be required to give or procure certain contracts of suretyship, guaranty or indemnity or other writings obligatory in nature, including continuations, extensions, alterations, renewals or substitutions thereof (hereinafter referred to as "Bond" or "Bonds") or Indemnitors may request Surety to refrain from canceling said Bonds; and

WHEREAS, Surety, at the request of one or more of the Indemnitors and because of the promises of the Indemnitors to execute this Agreement and the promises which are made by the Indemnitors in this Agreement, has executed or may in the future execute or procure the execution of one or more such Bonds on behalf of one or more of the Indemnitors.

NOW THEREFORE, in consideration of these premises, and the execution of any such Bond or Bonds whether executed before, simultaneously with or after the execution of this Agreement, the Indemnitors for themselves, their heirs, executors, administrators and successors, jointly and severally, agree with Surety, its successors and assigns, as follows:

1. APPLICATION. This is a continuing Agreement that remains, unless canceled in accordance with the provisions hereof, in full force and effect as to all Indemnitors with respect to each and every Bond issued hereunder. This Agreement applies to any Bond executed prior to, contemporaneously with, or after the execution of this Agreement. Surety's acceptance, whether before, simultaneously with or after the execution of this Agreement, of the request, written or otherwise, from a representative who is believed by Surety to be an authorized agent of one or more of the Indemnitors shall in each instance bring within the provisions of this Agreement any Bond executed by or procured by Surety pursuant to such request and the liability of the Indemnitors hereunder shall not be affected by the failure of any Indemnitor signing such request or bond as a principal, indemnitor or otherwise.

2. PREMIUMS. The Indemnitors are obligated to pay to Surety at 40 Wantage Avenue, Branchville, New Jersey 07890 (the "Home Office") in advance, the premiums or charges of Surety for each Bond or other instrument issued hereunder, and shall, where the premium or charge is annual, continue to pay same, until Surety has received written evidence satisfactory to it of its discharge or release from all liability on the Bond and in connection with all matters related thereto. If for any reason the price of any contract upon which a Bond is issued hereunder is increased, or additional work is performed under the contract for an additional charge, the Indemnitors will pay Surety additional premium at rates then in effect. Any increase in the price of any contract upon which a Bond is issued hereunder and any increase in the amount of any Bond, whether or not notice thereof is given to Indemnitors, shall not operate to discharge the obligations of Indemnitors hereunder to Surety.

3. INDEMNITY; PAYMENTS; LOANS; EVIDENCE. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless Surety (and any surety that Surety procures to execute any Bond and any other surety with which Surety may act as co-surety on any Bond or other instrument) from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature, including, but not limited to, interest, court costs and counsel, attorneys, consulting, accounting and other professional and trade fees, whether incurred on a flat fee per claim, percentage, time and material, hourly or other basis, (including the cost of in-house professionals) which Surety may sustain, incur, be put to or to which it may be exposed (1) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this

Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P_ Indemnitor's initials: _M.P_

Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._

Agreement or, (3) in enforcing any of the promises, covenants or conditions of this Agreement. The liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon at the rate of prime as published by the Wall Street Journal (or similar national financial publication should the Wall Street Journal cease to publish such rates) plus two points from the date of such payments, made by Surety under Surety's belief that (1) Surety was or might be liable therefor or (2) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability. While the Surety shall be under no obligation to advance or loan money to any Indemnitor, the liability of the Indemnitors shall also extend to any loans or advances, including any interest thereon, made by or guaranteed by Surety for the benefit of one or more of the Indemnitors, without any obligation on Surety's part to see to the application thereof. Payment by reason of the aforesaid causes shall be made by the Indemnitors to the Surety at its Home Office in Branchville, New Jersey as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Indemnitors agree that the vouchers or other evidence of such payments sworn to by a duly authorized representative of Surety shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety.

4.      DEMANDS FOR COLLATERAL. If Surety or any reinsurer shall establish a reserve to cover any liability, claim asserted, suit, award or judgment in connection with any Bond, or any loss, cost, expense or fee in connection therewith, the Indemnitors, immediately upon demand (the "Collateral Demand"), whether or not Surety shall have made any payment therefor and whether or not the collateral demanded may be in addition to other collateral security previously provided to Surety, shall provide to Surety at its Home Office, funds and/or other collateral security, which Surety in its sole discretion deems adequate, equal in value to such reserve and any increase thereof as collateral security on such Bond. Such funds and any other property previously provided to Surety shall be deemed collateral security and shall be available to Surety for any indebtedness of the Indemnitors to Surety. Such collateral security shall be held subject to the terms of this Agreement. If the Indemnitors fail to provide Surety with sufficient collateral after a Collateral Demand, they shall be in default of this Agreement. Indemnitors agree that their failure to provide collateral as demanded by Surety shall constitute irreparable harm to Surety for which it has no adequate remedy at law and that Surety may obtain injunctive relief compelling the delivery to Surety of sufficient collateral or in the alternative, Surety may obtain a judgment against each or any of the Indemnitors for the amount of the Collateral Demand plus the costs of obtaining the judgment, including its attorneys fees by any legal or equitable process. Any Collateral Demand reduced to a judgment may be immediately executed upon and any asset of an Indemnitor levied upon may either be held as collateral or liquidated in any manner deemed appropriate by Surety, including private or judicial sale. The proceeds of such liquidated assets may be held by Surety as collateral and applied to any of the Indemnitors' obligations to Surety arising under this Agreement or otherwise.

5.      ASSIGNMENTS; WHEN EFFECTIVE. The Indemnitors do hereby assign, transfer, pledge and convey to Surety as collateral security to secure the obligations of the Indemnitors hereunder, under the Bonds and with respect to any other liability or indebtedness of the Indemnitors to Surety whether heretofore or hereinafter incurred:
        (A)     All moneys due or to become due to the Indemnitors and all rights title and interest of the Indemnitors in, or growing in any manner out of, or in any way related to, any contract in which the Indemnitors or any of them may have an interest, whether or not bonded by Surety, now existing or hereafter acquired and any extensions, modifications, changes, alterations or additions thereto, including, but not limited to, any and all sums due or that may become due under any contract, compensation for extra work and claims and the proceeds of any insurance policies payable to any of the Indemnitors;
        (B)     All subcontracts and purchase orders let or to be let by any of the Indemnitors and all rights, actions, causes of action, claims and demands of whatsoever kind which any of the Indemnitors may now have or hereafter acquire with respect to any contract or any subcontract or purchase order or any bonds given to any Indemnitor by any subcontractor or vendor in connection with any contract;
        (C)     All right, title and interest of the Indemnitors in and to any contract, any sums due under any contract and any and all rights under contract, the work and all supplies, tools, plant, machinery, equipment and materials of whatsoever kind that may then or thereafter be upon the work, or in, on or about the site thereof, and all materials purchased for or chargeable to any contract which may be in the process of manufacture or construction, or in transportation or in storage elsewhere in connection with any contract whether or not bonded by Surety and the proceeds of any insurance policies issued with respect thereto;
        (D)     All other personal property now owned or hereafter acquired by each of the Indemnitors, including goods, documents, instruments, general intangibles, accounts, chattel paper, accounts receivable, notes receivable, choses in action, policies of life, casualty and liability insurance and proceeds of life, casualty and liability insurance and proceeds of collateral;
        (E)     The rights provided to Surety under the assignments herein granted may be exercised by Surety immediately on the occurrence of any one or more of the following events or upon Surety's apprehension that any one or more of the following may occur, any which shall constitute an event of default under this Agreement allowing the Surety to exercise any remedy available under this Agreement, at law or in equity:
            (1) Any abandonment, forfeiture, or breach of, or failure, refusal or inability to perform, the terms and provisions of any contract with respect to which a Bond or other instrument has been executed by Surety or demand by an obligee against a Bond alleging a default of a bonded obligation;

Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._

Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._

(2) The failure, delay, refusal or inability of an Indemnitor to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract with respect to which a Bond or other instrument has been executed by Surety;

(3) The failure, refusal or inability of an Indemnitor to satisfy any of the conditions of any such Bond or other instrument executed by Surety;

(4) The failure of an Indemnitor to perform, or comply with, any of the promises, covenants and obligations of this Agreement;

(5) The failure of any Indemnitor to pay and discharge, when due, any other indebtedness of any Indemnitor to Surety;

(6) Any assignment by an Indemnitor for the benefit of creditors, any appointment or application for the appointment of a receiver or trustee, or any voluntary or involuntary filing of a petition under Title 11 of the United States Code as to any Indemnitor whether insolvent or not;

(7) Any proceeding which deprives an Indemnitor of the use or interferes with the Indemnitor's use of any supplies, tools, plant, machinery, equipment or materials required for the performance of any contract with respect to which Surety has issued any Bond;

(8) the transfer by an Indemnitor of more than 10% of his assets to another without consideration; or,

(9) An Indemnitor's death, disappearance, incompetence, conviction of a felony, or imprisonment, if the Indemnitor is an individual.

(F) In the event the assignments become operative as provided above, in addition to any other remedies Surety may have, the Indemnitors authorize and empower Surety in its sole discretion and to the extent it deems appropriate, but without any obligation to take action:

(1) To assert, pursue, prosecute, compromise or settle in whole or in part at the Indemnitors' expense all of the rights, actions, causes of action, claims and demands assigned. Further, the Indemnitors hereby authorize the Surety, at its option and in its sole discretion, to prosecute said assigned rights in the name of the Surety or in that of the Indemnitors and to endorse in the name of the payee, and to collect any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights and to disburse the proceeds thereof; and

(2) To take possession of all or any part of the work under any contract or contracts covered by any said Bonds (together with all associated supplies, tools, plant, machinery, equipment, materials, job books, records, drawings and plans), at the Indemnitors' expense to complete all or any part of the work, or to re-let or consent to the re-letting or completion of the contract or contracts secured by any Bond. and the Indemnitors shall promptly repay to the Surety all losses, and expenses so incurred.

6. DISPOSITION OF COLLATERAL. Surety may pledge, assign, mortgage, transfer, convey, sell or otherwise liquidate or dispose of any property assigned to it pursuant to this Agreement, or heretofore or hereafter provided or pledged to Surety for any purpose, or which may otherwise be in the possession of Surety, without incurring any liability of whatsoever kind. The sale may be public or private and with or without notice of the time or place thereof. Surety is hereby authorized to settle any of its claims against, or release or compromise any collateral security of any one or more of the Indemnitors severally and such settlement or release of collateral shall not affect the liability of any of the others to Surety nor shall they be discharged in whole or in part by reason of the settlement or release in whole or in part of one or more of the Indemnitors of their obligations hereunder. When all liability of Surety under the Bond(s) or other instrument(s) issued by Surety is terminated, any balance remaining in the possession of Surety after Surety has paid or reimbursed itself for all indebtedness of any Indemnitor under this Agreement or otherwise shall be returned to the Indemnitors. The Surety shall have no obligation to: invest, collect interest or dividends, or to provide a return on, the deposit, exercise any rights of the Indemnitors, make presentment, demand or protest, or take any action to protect or enforce the collateral. The Indemnitors agree that the Surety shall not be liable for depreciation of the collateral, investment of the collateral, or any failure to perform or not perform any of the aforementioned acts. Further, the Indemnitors agree that the Surety shall not be required to exhaust its recourse against Principal on any Bond or against any Indemnitor, but the Surety may resort to the collateral without recourse to such parties. The Indemnitors waive any and all defenses against the Surety based upon the taking or release of other indemnity or collateral.

7. SETTLEMENTS AND COMPROMISES Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and Surety's decision thereon shall be final and binding upon the Indemnitors. Surety shall be entitled to apply any collateral security held by it under this Agreement or any collateral security agreement between it and any of the Indemnitors to the satisfaction of or in reimbursement of Surety as a result of its satisfaction of any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and to the direct payment of or reimbursement to itself of interest, costs, expenses and counsel and other professional or consulting fees incurred by it as a result of its having executed or procured any Bond. Surety shall at all times have the right but not the obligation to retain the counsel and experts of its choice to defend itself from any claim, lien, levy, liability, suit or judgment brought against Surety on any Bond or against any job funds or collateral security held by Surety or an Obligee on any Bond, including retainages or to prosecute an action to preserve Surety's rights with respect to collateral security, contract funds, trust funds or liens on any bonded project and the cost of retaining such counsel and experts shall fall within the Indemnitors' obligation to indemnify, exonerate and hold Surety harmless.

Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P_

Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._

8. INVALIDITY OR RELEASE AS TO ONE OR MORE INDEMNITORS. If for any reason this Agreement is invalid as to any Indemnitor or if any Indemnitor's obligations or liability under this Agreement is terminated in the manner herein provided or otherwise by operation of law or by settlement between the Surety and any such Indemnitor, the remaining Indemnitors shall nevertheless be bound hereunder, for the full amount of liability, losses and expenses which Surety may sustain or incur.

9. WAIVER OF NOTICE; CHANGES. Indemnitors waive notice of: (1) the execution of any Bond or any continuation, extension, modification, renewal or substitution thereof; (2) any default or any other event that may give rise to or increase liability under any Bond or under this Agreement; (3) any settlement or compromise between Surety and another Indemnitor; (4) any disposition or compromise of collateral; and (5) any payment or settlement of a claim against a Bond. The Surety in its sole discretion is authorized and empowered without notice to or knowledge of the Indemnitors, notice being hereby expressly waived, to assent, or to refuse to assent, to any change or modification whatsoever in such Bond and/or contracts and/or in the general conditions, plans or specifications which accompany said contracts, including, but not limited to, any change in the time for completion of said contracts and to payments or advances thereunder before the same may be due, and to assent, or refuse to assent, to or take any assignment or assignments, and to execute, or consent to the execution of, any continuation, extension or renewal of the Bond and to execute any substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties all without notice to or knowledge of the Indemnitors; it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent or refusal to assent by the Surety does or might substantially increase the liability of the Indemnitors; and that the Indemnitors shall be liable to the Surety pursuant to this Agreement on account of any such altered, changed, modified, amended, limited, renewed, substituted, or extended Bond even if the change substantially increases the Indemnitors' liability. The Indemnitors hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Surety or the rights or liabilities of the Indemnitors

10. TRUST FUNDS. If any of the Bonds or other instruments are executed by Surety in connection with the performance of a contract, the entire contract price or other consideration to be received by an Indemnitor, whether received as payments or loans, shall be dedicated to the satisfaction of the conditions of the Bond(s) or other instrument(s). All consideration, including all funds paid, due or to become due and all securities, warrants, checks or other evidence of indebtedness and the proceeds thereof, given upon or under any contract in connection with which Surety shall have issued a Bond ("Trust Funds") shall be impressed with a trust in favor of and for the benefit of laborers, materialmen, suppliers, subcontractors and Surety for the exclusive purpose of satisfying the conditions of the Bonds. In the event of a default by any Indemnitor in the performance or compliance with any promise, covenant or obligation under this agreement, the Surety may demand and the Indemnitors shall cause all funds or the proceeds of all consideration received or to be received from any contract referred to in any Bond to be deposited into separate trust accounts with a bank or similar depository designated by Surety and such accounts shall be controlled by an escrow agent to be designated by Surety. If any of the Bonds or other instruments are executed by Surety to assure that funds collected by an Indemnitor, or any taxable or chargeable portion thereof, are paid to a third party obligee, all such funds received by such Indemnitor shall be impressed with a trust in favor of and for the benefit of such obligee and Surety for the exclusive purpose of satisfying the conditions of the Bonds and each Indemnitor who exercises control or has the ability to exercise control over the collection and application of such trust funds shall have a fiduciary duty owing to the Surety to segregate such trust funds and cause such trust funds to be paid to the obligee. In the event of a default by any Indemnitor in the performance or compliance with any promise, covenant or obligation under this agreement, the Surety may demand and the Indemnitors shall cause all such trust funds to be deposited into separate trust accounts with a bank or similar depository designated by Surety and such accounts shall be controlled by an escrow agent to be designated by Surety.

11. COVENANT NOT TO ASSIGN BONDED CONTRACT PROCEEDS. Indemnitors warrant that, with respect to any contract for which Surety has or may issue a Bond, undertaking or instrument, the Indemnitors have not and shall not assign, except as collateral, its rights to receive payments from such contract to any other person or entity without the express written consent of Surety. Indemnitors agree that any consent by Surety to such assignment shall not operate to discharge, diminish or lessen their obligations to Surety hereunder with respect to such contract. Indemnitors agree and acknowledge that if one or more of the Indemnitors assigned or does assign its right to receive payments to a third party, except as collateral, without Surety's written consent, or in the event a collateral assignment of its right to receive payments becomes effective, the Indemnitors shall upon Surety's demand, procure the discharge of Surety from the Bond of such assigned contract or the Indemnitors shall immediately deposit with Surety cash collateral equal to the penal sum of the Bond issued on such contract; if the Indemnitors do not procure the discharge of Surety or they do not deposit the requisite collateral with Surety, Surety may, in addition to any other remedy available, obtain a judgment against the Indemnitors for the penal sum of the Bond plus costs of suit and attorneys fees.

12. BOOKS, RECORDS & CREDIT REPORTS. Indemnitors warrant and represent that any financial information furnished by any Indemnitor to Surety is true and accurate and acknowledge that Surety has and will continue to rely upon such information in executing any Bond. Indemnitors shall have a continuing obligation to provide current financial information to Surety until such time as all obligations of the Indemnitors hereunder have been discharged. Surety, at any time, shall have continuous and uninterrupted

Indemnitor's initials: __M.P.__ Indemnitor's initials: __M.P.__ Indemnitor's initials: __M.P.__ Indemnitor's initials: __M.P__

Indemnitor's initials: __A.P.__ Indemnitor's initials: __A.P.__ Indemnitor's initials: __A.P.__ Indemnitor's initials: __A.P.__

access to the books, records, accounts and nonconsumer and consumer credit reports of the Indemnitors and to all matters and information concerning any Bond(s) or instrument(s) executed by Surety and the financial condition, credit worthiness and assets of any Indemnitor until the liability of Surety under each and every Bond or other instrument executed by it and each and every obligation of the Indemnitors under this Agreement is terminated and discharged to the satisfaction of Surety. Banks, depositories, consumer credit reporting agencies, materialmen, supply houses, obligees on the Bonds and all other persons and organizations are hereby authorized to furnish Surety, at its request, any information (including copies thereof) requested including, but not limited to, consumer credit reports of any individual Indemnitor, the status of work under contracts being performed by an Indemnitor, the condition of the performance of such contracts and payments of such accounts. Regarding consumer credit reports, each Indemnitor agrees that a photocopy of this agreement shall constitute a written request of the Indemnitor which the Surety may present to a Consumer Credit Reporting Agency as proof of Surety's authority to obtain a Consumer Report as defined under the Fair Credit Reporting Act.

13.    SURETY'S RIGHT TO DECLINE EXECUTION. Surety may decline to execute any Bond for which request is made without incurring any liability to and without affecting the obligations of the Indemnitors with respect to any other Bond or Bonds issued hereunder. Notwithstanding that Surety may have executed a bid or proposal bond in connection with any proposed contract, Surety shall have the right to decline to execute any performance, payment or other bond that may have been required in connection with the award of such contract without incurring any liability to the Indemnitors and without affecting the obligations of the Indemnitors with respect to the bid or proposal bond and the Indemnitors agree that they shall make no claim against Surety for declining to execute any such bond.

14.    WAIVER OF PROPERTY AND HOMESTEAD EXEMPTION. The Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of the United States or any State, Territory or Possession. Indemnitors agree to provide immediate notice to Surety of any change of their domicile or principal place of business.

15.    TERMINATION OF INDEMNITY ON FUTURE BONDS. Any of the Indemnitors other than those Indemnitors designated as a principal in a Bond, shall have the right at any time to request cancellation of this Agreement as to him by delivering written notice of such request to Surety at the Home Office of Selective Insurance Company of America at 40 Wantage Avenue, Branchville, NJ 07890; Attention: Bond SBU. Such cancellation shall not become effective until the earlier of thirty (30) days after Surety's actual receipt of such notice or the date of written acceptance thereof by Surety. Such cancellation shall not relieve such Indemnitor from liability for any Bond or other instrument executed by Surety prior to the date of such cancellation, nor shall it affect the future liability of the Indemnitors who do not request cancellation.

16.    REQUIRED NOTICE TO SURETY; ADDRESS FOR NOTICE. The Indemnitors will immediately notify Surety in writing at the Home Office of Selective Insurance Company of America of: any suit, action or proceeding growing out of or relating to any Bond or other instrument executed by Surety on behalf of the Indemnitors or any one of them; or any notice or knowledge they receive that the liability insurance of an Indemnitor named as a principal in a Bond has been or will be canceled, terminated or non-renewed for any reason or that such coverage will be reduced; any filing by an Indemnitor of an assignment for the benefit of creditors or any filing of a petition in bankruptcy under the federal bankruptcy act either by or against any Indemnitor. All such notice must be addressed to:    Selective Insurance Company of America
                    Attention: Bond SBU
                    40 Wantage Avenue.
                    Branchville, NJ 07890

17.    ATTORNEY-IN-FACT. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Indemnitors assigned, transferred and conveyed to Surety in this Agreement, and in the name of any Indemnitor, to make, execute or endorse and deliver any and all additional or other assignments, vouchers, financing statements, mortgages, releases, satisfactions, checks, drafts, notes, certificates of deposit, letters of credit, deeds, bills of sale, authorizations (including an authorization on behalf of the Principal or any Indemnitor to release information), documents or papers, including any agreement under §49.404(e)(4) of the Federal Acquisition Regulation or any direction or authorization under 48 Code of Federal Regulations §28.106-7, deemed necessary and proper by Surety in order to give full effect not only of the intent and meaning of the within assignments, but also to the full protection intended to be given herein to Surety under all other provisions of this Agreement, the Bond(s) or otherwise. The Indemnitors hereby ratify and affirm all acts and actions taken and done by Surety as such attorney-in-fact. The Indemnitors waive any and all claims they had, now have or may ever in the future have against Surety as a result of its having taken any action or done any thing as such attorney-in-fact or otherwise under this agreement.

Indemnitor's initials: _M. P._ Indemnitor's initials: _M. P._ Indemnitor's initials: _M. P._ Indemnitor's initials: _M. P._

Indemnitor's initials: _A. P._ Indemnitor's initials: _A. P._ Indemnitor's initials: _A. P._ Indemnitor's initials: _A. P._

18.     UNIFORM COMMERCIAL CODE. This Agreement shall constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of this Agreement shall be solely at the option of the Surety, and the failure to do so shall not release or impair any of the obligations of the Indemnitors to the Surety under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of the Surety under this Agreement or otherwise. The Surety may record or file this Agreement or any other document executed by any of the Indemnitors or by the Surety under the power of attorney herein granted. For the purpose of recording this Agreement a photocopy acknowledged before a Notary Public to be a true copy hereof shall be regarded as an original.

19.     RISK OF BOND TERMS. Each Indemnitor acknowledges that the Surety has no duty, express or implied, to review any contract, bond or other form of document by or on behalf of any Indemnitor and that the Surety's execution of any bond is not to be construed as a representation of any kind, explicit or implied, as to the reasonableness of the terms and conditions contained therein or within any contract referenced in such bond, the risks of which are, first and foremost, the responsibility of the Indemnitors requesting the execution of such bond.

20.     CUMULATIVE RIGHTS. Surety's rights under this Agreement are cumulative with, and in addition to, all other rights of Surety, however derived. Surety is not required to exhaust its rights or remedies against any Indemnitor or to await receipt of any final dividends from the estate or legal representative of any Indemnitor or the receipt of proceeds from any assignment herein granted before asserting its rights hereunder or commencing any action or proceeding against any other Indemnitor.

21.     LIBERAL CONSTRUCTION. This Agreement shall be liberally construed so as to protect and indemnify Surety and any company that Surety may procure to execute any Bond or that may join with Surety as co-surety or be or become reinsurer on any Bond, any of whom shall, after obtaining the written consent of the Surety, be deemed to have a direct right of action under this Agreement against the Indemnitors.

22.     INVALIDITY OF PROVISIONS; SEVERABILITY. If any provision or provisions of this Agreement be deemed void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or terminated thereby, but shall be enforced with the same effect as though such provision were omitted.

23.     SUITS AND PROCEEDINGS. Separate suits or proceedings may be brought by Surety on this Agreement as causes of action accrue. Any suit or other proceeding brought by Surety or the recovery of judgment upon any cause of action by Surety shall not prejudice or bar other suits or proceedings by Surety upon other causes of action, whether theretofore or thereafter arising. The Indemnitors submit to the jurisdiction of the state and federal courts situate in New Jersey, waiving any defenses of lack of personal jurisdiction and waiving venue arguments, including forum non conveniens, in any action brought by Surety in the State of New Jersey. Surety reserves the right to bring an action in any state where an Indemnitor has substantial contacts or where a project covered by a bond subject to this agreement is located or where a claimant brings suit against Surety on a bond covered by this agreement and Indemnitors agree to submit to the jurisdiction of the courts in such state.

24.     WAIVER OF TRIAL BY JURY. The Indemnitors and the Surety each hereby waive trial by jury in any action or proceeding to which any or all of the Indemnitors and the Surety may be parties, arising out of or in any way pertaining to this Agreement. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Agreement. This waiver is knowingly, willingly and voluntarily made by the Indemnitors and the Surety and the Indemnitors and the Surety each represent and warrant that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

25.     INDEMNITORS' OBLIGATION TO COOPERATE. The Indemnitors shall give the Surety prompt notice of any claim, demand, suit, arbitration proceeding or other action that purports to be instituted on any Bond or of any levy by the Internal Revenue Service or any other creditor on Trust Funds, whether such funds are held by an obligee or an Indemnitor and shall fully cooperate with the Surety in the defense thereof.

26.     CONTRIBUTION. Each Indemnitor assigns to Surety its claims against every other Indemnitor for contribution, subrogation or indemnification.

27.     INDEMNITORS TO OBTAIN RELEASE OF SURETY. The Indemnitors will, at the request of the Surety, procure the discharge of the Surety from any Bond and all liability by reason thereof

Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._ Indemnitor's initials: _M.P._

Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._ Indemnitor's initials: _A.P._

28.    INDEMNITORS RIGHT TO CONSULT COUNSEL. Indemnitors represent and warrant that each of them has carefully read and understands this agreement and has had or waived the opportunity to confer with counsel concerning it.

29.    HOW TO MAKE CHANGES TO THIS AGREEMENT. By signing this agreement, the undersigned Indemnitors agree to be bound by all terms and conditions as set out in the original typeset, it being understood that additions, alterations and strikethroughs are void and of no effect and do not constitute an offer or counteroffer. The undersigned acknowledge and agree that the only way to change any term of this agreement as typeset is by an addendum that is counter-signed by an officer of the Surety. Indemnitors understand that this Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed by Surety to form a part hereof. **DO NOT SIGN THIS AGREEMENT UNLESS YOU INTEND TO BE BOUND BY ITS TERMS AS SET OUT IN THE ORIGINAL TYPESET OR YOU ARE IN POSSESSION OF AN ADDENDUM SIGNED BY THE SURETY.**

IN WITNESS WHEREOF, we have signed and sealed this Agreement to be effective the _15th_ day of _January_, 20_21_.

**ATTEST/WITNESS**

_____

Tax ID #: _▮▮▮▮▮▮▮▮▮▮▮▮

**Business Indemnitor:**

B & P Mechanical Inc _____ NO (SEAL)

By:_____

Manishkumar Patel            President
(print name and title above)

Business Address: 3200 W Highview Dr

| Appleton | WI | 54914 |

### BUSINESS ACKNOWLEDGMENT

State of _Wisconsin_

County of _Outagamie_

On this _15th_ day of _January_ , 20 _21_ , personally came before me,_____ Manishkumar Patel

who is the _President_ of _B & P Mechanical Inc_

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (seal)
Notary Public
My Commission Expires: **09/18/2023**

Case 1:26-cv-00804-BBC    Filed 05/06/26    Page 17 of 23    Document 1

**ATTEST/WITNESS**

Tax ID #: _ ▮▮▮▮ _____

**Business Indemnitor:**

ABL Automation Inc _____ (SEAL)

By: _____

Manishkumar Patel, President
(print name and title above)

Business Address: 2025 South Branch Blvd

Oak Creek, WI 53154

**BUSINESS ACKNOWLEDGMENT**

State of Wisconsin
County of Outagamie.

On this 15th day of January , 2021 , personally came before me, Manishkumar Patel

who is the President of ABL Automation Inc
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (seal)
Notary Public
My Commission Expires: 09/18/2023

**ATTEST/WITNESS**

Tax ID #: ▮▮▮▮ _____

**Business Indemnitor:**

Electronic Expeditors Inc _____ (SEAL)

By: _____

Manishkumar Patel, President
(print name and title above)

Business Address: 2025 South Branch Blvd

Oak Creek, WI 53154

**BUSINESS ACKNOWLEDGMENT**

State of Wisconsin
County of Outagamie

On this 15th day of January , 2021 , personally came before me, Manishkumar Patel

who is the President of Electronic Expeditors Inc
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (seal)
Notary Public
My Commission Expires: 09/18/2023

B13 (01/10)

**ATTEST/WITNESS**                                    **Business Indemnitor:**

_____          _____ (SEAL)

                                         By:_____

                                                     (print name and title above)

Tax ID #: _____        Business Address:_____

                                         _____

                                         _____

## BUSINESS ACKNOWLEDGMENT

**State of** _____
**County of**_____

On this_____ day of_____ , 20 _____ , personally came before me,_____

who is the _____ of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the
act of said business entity.

                                         _____ (seal)
                                         Notary Public
                                         My Commission Expires:

**WITNESS:**                             **Individual Indemnitor:**

_____                  Signature: _____

                                         Printed Name:_____ Manishkumar Patel_____

                                         Home Address:_____ 5301 Farwell Ave_____

                                         | Skokie | IL | 60077 |

                                         Social Security #_____ ▮▮▮▮▮ _____

**WITNESS:**                             **Individual Indemnitor:**

_____                  Signature: *Asmita Patel*

                                         Printed Name:_____ Asmita Patel_____

                                         Home Address:_____ 5301 Farwell Ave_____

                                         | Skokie | IL | 60077 |

                                         Social Security #_____ ▮▮▮▮▮▮▮▮

## INDIVIDUAL ACKNOWLEDGMENT(S)

**State of** *Wisconsin*
**County of** *Outagamie*
On this *15th* day of *January* , 20 *21* , personally came before me, _____ Manishkumar Patel _____

and _____ Asmita Patel _____ to me known to be the individual(s) who executed the foregoing instrument and
acknowledged that he/she/they executed the same as their voluntary act and deed.

                                         _____ (seal)
                                         Notary Public
                                         My Commission Expires: *09 / 18 / 2023*

B13 (01/10)                              Page 9 of 9

Case 1:26-cv-00804-BBC    Filed 05/06/26    Page 19 of 23    Document 1

# EXHIBIT B

**Complaint for Indemnity and Specific Performance**

Demand Letter to Indemnitors (Defendants) Dated February 12, 2026



THE LAW OFFICES OF
# T. Scott Leo, P.C.

Suite 514
100 N. LaSalle St.
Chicago, IL 60602

## Christian J. Dobosiewicz

Email:
cdobosiewicz@leolawpc.com

Telephone: (312) 857-0910
Facsimile: (312) 857-1240
www.leolawpc.com

## <u>COLLATERAL DEMAND NOTICE</u>

February 12, 2026

**Via Fedex**

TO:  B&P Mechanical, Inc., Manishkumar Patel, Asmita Patel, and Affiliates:

B&P Mechanical, Inc.
3200 W Highview Drive
Appleton, WI 54914
Att: Manishkumar Patel, President

Manishkumar Patel
5301 Farwell Ave
Skokie, IL 60077
usamanishpatel@yahoo.com

Asmita Patel
5301 Farwell Ave
Skokie, IL 60077

Electronic Expeditors, Inc.
2025 South Branch Blvd
Oak Creek, WI 63154
Att: Manishkumar Patel, President

ABL Automation Inc
2025 South Branch Blvd
Oak Creek, WI 63154
Att: Manishkumar Patel, President

This is a Collateral Demand Notice. This firm represents Selective Insurance Company of America ("Selective") with respect to the Payment and Performance Bonds it issued for B&P Mechanical Inc., for various projects. Selective executed certain Performance and Payment bonds in connection with commercial contracts of B&P.

On January 15, 2021, as consideration for Selective to issue bonds for B&P, you entered into and executed a General Agreement of Indemnity ("GIA"). A copy of the GIA is attached to this

Notice. Selective executed the Bonds in reliance upon the obligations undertaken by B&P and its individual indemnitors under the terms and provisions of the GIA.

As you are aware, Selective received notice from Green Bay Area Public School District, notifying it of your termination on a contract for which Selective issued bonds. The notice cites B&P's failure to provide the proper amount of manpower, equipment and materials necessary to mee the project schedule. Selective now faces potential Performance and Payment Bond claims due to your abandoning of the work and failure to comply with the underlying contract.

Under the GIA, B&P is obligated to provide collateral security upon demand by Selective. Section 4 of the GIA states, in part:

> *" If Surety or any reinsurer shall establish a reserve to cover any liability, claim asserted, suit, award or judgment in connection with any Bond, or any loss, cost, expense or fee in connection therewith, the Indemnitors, immediately upon demand (the "Collateral Demand"), whether or not Surety shall have made any payment therefor and whether or not the collateral demanded may be in addition to other collateral security previously provided to Surety, shall provide to Surety at its Home Office, funds and/or other collateral security, which Surety in its sole discretion deems adequate, equal in value to such reserve and any increase thereof as collateral security on such Bond.*

Further, Section 4 of the GIA states, in part:

> *" If the Indemnitors fail to provide Surety with sufficient collateral after a Collateral Demand, they shall be in default of this Agreement. Indemnitors agree that their failure to provide collateral as demanded by Surety shall constitute irreparable harm to Surety for which it has no adequate remedy at law and that Surety may obtain injunctive relief compelling the delivery to Surety of sufficient collateral or in the alternative, Surety may obtain a judgment against each or any of the Indemnitors for the amount of the Collateral Demand plus the costs of obtaining the judgment, including its attorneys fees by any legal or equitable process."*

Please be advised that Selective has set up a reserve to cover liability under the Bond as follows:

|  | Bond Number | Penal Sum | Obligee |
|---|---|---|---|
| 1. | Bond No. B 1337037 | $5,900,000 | Green Bay Area Public School District |
| 2. | Bond No. B 1336265 | $6,020,000 | UWGB Cofrin Technology and Educations Center |
| 3. | Bond No. B 1336210 | $1,254,529 | Howe Elementary |
| 4. | Bond No. B 1320220 | $106,960 | State of Wisconsin |
| 5. | Bond No. B 1324018 | $60,180 | Fox Valley Technical College |
| 6. | Bond No. B 1312820 | $912,250 | The Samuels Group, Inc. |
| 7. | Bond No. B 1305872 | $3,452,219 | Appleton Area School District |
| 8. | Bond No. B 1300487 | $2,713,350 | Performance Services, Inc |
| 9. | Bond No. B 1253279 | $1,209,042 | Capelle Bros. & Diedrich, Inc. |

Therefore, pursuant to Section 4 of the GIA, Selective hereby demands the Indemnitors provide cash collateral security to Selective in the sum of $3,714,652.00USD within ten (10) days from the date of this Notice. This figure is based on the reserve for combined liability of Pine Gate and its affiliates under the Bonds. Failure to provide the full collateral security demanded in this Notice will be deemed a default under the GIA and may result in Selective bringing legal action to enforce all of its rights under the GIA.

Additionally, Section 12 of the GIA grant the Surety access to all books, records and credit reports of its Principal. Section 12 of the GIA states in part:

> *" Indemnitors shall have a continuing obligation to provide current financial information to Surety until such time as all obligations of the Indemnitors hereunder have been discharged. Surety, at any time, shall have continuous and uninterrupted access to the books, records, accounts and nonconsumer and consumer credit reports of the Indemnitors and to all matters and information concerning any Bond(s) or instrument(s) executed by Surety and the financial condition, credit worthiness and assets of any lndemnitor until the liability of Surety under each and every Bond or other instrument executed by it and each and every obligation of the indemnitors under this Agreement is terminated and discharged to the satisfaction of Surety."*

Therefore, pursuant to Section 12 of the GIA, Selective hereby demands an inspection of the Books and Records kept by B&P and the Indemnitors. Failure to provide proper access or documentation within ten (10) days from the date of this notice will be deemed a default under the GIA and may result in Selective bringing legal action to enforce all of its rights under the GIA.

Nothing herein is intended, nor shall it be construed, as a waiver, relinquishment, modification, or amendment of any of the terms, provisions or conditions in the GIA. Selective fully reserves all rights, remedies, claims, and defenses including, without limitation, the right to take any and all steps necessary to protect its interests and to compel specific performance of the terms of the Indemnity Agreements.

I look forward to your prompt payment to Selective of the collateral security demanded above.

Sincerely,

The Law Offices of T. Scott Leo
100 N. LaSalle Street, Suite 514
Chicago, Illinois 60602
312-857-0910
cdobosiewicz@leolawpc.com
/s/Christian Dobosiewicz
Christian Dobosiewicz